MGD

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DaJuan Torrell Williams, | No. CV 17-01833-PHX-DGC (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff DaJuan Torrell Williams, who is currently confined in the Arizona State Prison Complex (ASPC)-Eyman, Browning Unit, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983. (Doc. 15.) Before the Court is Plaintiff's Motion for Special Court Order (Doc. 30), which the Court construes as a motion for injunctive relief. The Court will deny the Motion.

**I.    Background**

On screening of Plaintiff's First Amended Complaint pursuant to 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated First Amendment claims against Arizona Department of Corrections (ADC) Director Charles L. Ryan and Correctional Officers Barner, Anderson, Osler, Mangan, Williams, and Antolin. (Doc. 17 at 9.) The Court required those Defendants to answer the claims against them in Counts One through Seven and dismissed Count Eight. (*Id.*) The Court also determined that Plaintiff stated a claim against Defendant Doe 2 and gave Plaintiff 60 days to substitute the actual

name of Doe 2. (*Id.* at 9-10.) Defendant Doe 2 was dismissed on June 18, 2018. (See Doc. 33.)

Plaintiff's claims relate to ADC's Department Order (DO) 914.07, which prohibits prisoners from sending, receiving or possessing "sexually explicit material or content that is detrimental to the safe, secure, and orderly operation of the facility." (Doc. 15 at 5.) Plaintiff alleges that even though he is a general population prisoner and not a sex offender, DO 914.07 applies to him, and that prisoners were allowed to have non-obscene sexually explicit material before Ryan became the ADC Director. (*Id.* at 6-8.) Plaintiff also alleges that the policy is used to exclude materials that are not sexually explicit, including novels, legal texts and publications such as *Prison Legal News*, "non-Christian" texts, fashion magazines such as *Cosmopolitan* and *Harper's Bazaar*, and men's magazines such as *Black Men*, *Smoothgirl*, and *Spicy*. (*Id.* at 9-10.) Plaintiff alleges that he has had novels, magazines, catalogs, "non-nude" photographs of women, and even an issue of *Prison Legal News* either confiscated from him or excluded under the policy. (Doc. 15-1 at 1-7.)

## II. Motion for Injunctive Relief

In his one-page Motion dated May 14, 2018, Plaintiff asserts that he was transferred from the ASPC-Yuma to the ASPC-Eyman Special Management Unit (SMU) II "d[ue] to an incident in which a number of staff assaults may have occurred" on May 8, 2018. (Doc. 30 at 1.) Plaintiff states that as of the date of his Motion, he had not received any of his property, which arrived with him at the ASPC-Eyman. (*Id.*) Plaintiff asserts that he has two active cases against the ADC in this Court and one before the Arizona Court of Appeals, and that the "ADC-SMU II is actively attempting to bar and/or hinder Plaintiff's efforts to effectively litigate" and is preventing his access to the courts by withholding his legal paperwork and property. (*Id.*) Plaintiff seeks an order requiring

1  "ADC-SMU II" to give him "all authorized and allowable personal property
2  immediately."¹ (*Id*.)

3  In their Response, Defendants present the Declaration of Panann Days, the Deputy
4  Warden of ASPC-Eyman, Browning Unit.² (Doc. 32-1 at 44-45.) Days testifies that
5  Plaintiff arrived at the Browning Unit with a "large amount of property," which was
6  processed, and Plaintiff was given "four boxes of his legal paperwork for his active
7  cases." (*Id*. ¶ 4.) The remaining boxes of legal paperwork for Plaintiff's non-active cases
8  were placed in legal storage, any property Plaintiff had "that is non-allowable in a
9  maximum custody setting was also place[d] in storage," and Plaintiff was issued "seized
10 property receipts for items placed in storage." (*Id*. ¶¶ 5-6.) According to Days, none of
11 Plaintiff's legal paperwork is being withheld and if Plaintiff needs any legal paperwork
12 that is in storage, he is allowed to exchange one box of legal paperwork in his living area
13 for one that is in legal storage. (*Id*. ¶ 6.)

14 Defendants assert that DO 909, *Inmate Property*, allows prisoners to keep up to
15 four boxes of personal property in their living area. (Doc. 32 at 1-2, citing DO 909,
16 Attach. A at 6 (Doc. 32-1 at 35).) They argue that Plaintiff's property was not seized or
17 confiscated as a result of retaliation or discrimination, but was withheld because he had
18 property in excess of what ADC policy allows. (*Id*. at 2.)

19 Defendants also argue that Plaintiff has not demonstrated any actual injury to
20 support an access-to-courts claim, such as the inability to meet a filing deadline or
21 present a claim. (Doc. 32 at 2-3, citing *Lewis v. Casey*, 518 U.S. 343, 348-49 (1996).)
22 Defendants contend that "[i]t is well settled that the duty of the state to provide access to
23 courts does not extend beyond the pleading stage." (*Id*. at 3, citing *Cornett v. Donovan*,

---

¹ Plaintiff also alleges that he has been retaliated against for the incident at ASPC-Yuma and has been denied meals, pepper sprayed and denied a shower afterwards, and placed in a cold cell overnight with only a mattress. (Doc. 30 at 1.) Plaintiff does not seek any relief related to those events.

² Defendants assert that Browning Unit was formerly called SMU II. (Doc. 32 at 1 n.1.)

51 F.3d 894 (9th Cir. 1995).) Defendants argue that Plaintiff has had access to the courts as evidenced by his court filings after his May 8, 2018 transfer from ASPC-Yuma to ASPC-Eyman, including the pending Motion for Special Court Order in this case (Doc. 30), the same Motion for Special Court Order (Doc. 53) in *Williams v. Mooney*, CV 16-04059-PHX-DGC (DMF) (D. Ariz.), and a response to Defendants' Motion for Summary Judgment in *Williams v. Mooney* (Doc. 52).[3] (*Id.*)

On the day Defendants filed their Response, Plaintiff filed a "Supplemental Pleading to Motion for Special Court Order" (Doc. 35) and he filed a Reply 11 days later (Doc. 39). In his "Supplemental Pleading," Plaintiff asserts that on May 30, 2018 he "was finally given all of his property" that he had been denied since May 8, but on June 1, 2018, guards came to his cell with direct orders from Captain Bowers "to remove, specifically, specific legal property (no other property) from Plaintiff's cell and possession." (Doc. 35 at 1-2, citing Attachs. A, B.) Plaintiff's Attachment A is an Inmate Property Inventory Supplement listing 8 boxes of "Legal Paperwork," which Plaintiff asserts is not excessive for someone who has been in prison for 20 years. (*Id.* at 2, 4.) Attachment B is an Inmate Informal Complaint Resolution dated June 6, 2018.[4] (*Id.* at 5.) Plaintiff wrote in his Informal Complaint that the last time he was in the unit he was allowed 6 boxes in his cell and now has only 4 boxes, so he is in compliance with the policy. (Doc. 39 at 10.) Plaintiff said he kept some papers and other personal items on the floor because there were no shelves in the cell, but the guards were only told to take Plaintiff's legal work that was on the floor. (*Id.*) Plaintiff said that his "legal property was targeted in retaliation and for the purposes of harassment and to hinder [his] access to court." (*Id.*)

---

[3] Plaintiff dated his Response to Defendants' Motion for Summary Judgment in *Williams v. Mooney* on May 7, 2018, which was before his transfer from ASPC-Yuma. (*See* Doc. 52 at 9 in *Williams v. Mooney*, CV 16-04059-PHX-DGC (DMF) (D. Ariz.).)

[4] The photocopied Informal Complaint is almost too faint to be legible, but Plaintiff provided a clearer copy with his Reply. (*See* Doc. 39 at 10.)

Plaintiff argues that he has suffered an actual injury because he was unable to meet or request an extension to his May 16 and May 31, 2018 deadlines in the Arizona Court of Appeals. (Doc. 35 at 2, citing Attach. C.) Plaintiff's Attachment C is a document he prepared in Maricopa County Superior Court Case No. LC2013-000505-001 titled "Request to Recall and/or Stay Mandate, Reinstatement of Rule 22 & 23 Time Frames," which indicates that Plaintiff mailed it to the Arizona Court of Appeals on June 11, 2018. (*Id*. at 6-8.) In that document, Plaintiff asks that any mandate be recalled, if one had issued, or, if no mandate had issued, that it be stayed "for cause" and that he be allowed to file for reconsideration and to petition the Arizona Supreme Court for review. (*Id*. at 6.) Plaintiff explained to the Arizona Court of Appeals that when he was transferred to ASPC-Eyman on May 9, 2018, all of his property was taken from him, and he was unable to immediately file change of address notices. (*Id*. at 7.) Plaintiff stated that he did "file his pleadings in the above mentioned action on May 7, 2018" and that he received the appellate court's May 1, 2018 decision on May 21, 2018, but he was not able to respond or notify the court of the "situation" because he did not have his property, "legal or otherwise," until May 30, 2018. (*Id*. at 6-7.) Plaintiff asserted that legal property was again taken from him on June 1, 2018, but that he "fully intended/intends to exercise his rights of due process," and he asked that he be allowed to file a motion for reconsideration and petition for review. (*Id*. at 7.)

In his Reply to this Court, Plaintiff asserts that the Mandate has now issued in his State court case, "depriving Plaintiff of his 'due process' as a direct result of the prison's unconstitutional acts in this matter." (Doc. 39 at 5, citing Attach. D.) Plaintiff's Attachment D is a letter from the Deputy Clerk of the Maricopa County Superior Court dated June 6, 2018, stating that the "Original Mandate" and "Copy of Memorandum Decision" were attached to the letter, but Plaintiff did not include either the Original Mandate or Memorandum Decision with his Reply. (*See id*. at 11.)

Plaintiff also asserts that defense counsel is "somewhat correct" by stating that Plaintiff "is allowed to do a 'one for one' exchange with his legal boxes in storage and

the boxes in his cell," but that prisoners are only allowed to exchange boxes once a week, on Wednesday. (Doc. 39 at 4-5.) According to Plaintiff, this system is not practical because he is juggling 3, and soon to be 4, cases at once and having to wait from 2 to 8 days to exchange boxes "is not adequate, efficient, or reasonable." (*Id*. at 5.) Plaintiff states that he only has 6 boxes total and that the Deputy Warden has discretion to override policy and procedures on a case-by-case basis. (*Id*.) Plaintiff argues that he was discriminated against because only his legal paperwork was seized "in retaliation and as a means of harassment and to impede his access to [the] courts." (*Id*.)

## III. Legal Standard

A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Generally, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint[,]" and if a plaintiff seeks injunctive relief based on claims that were not raised in the complaint, the court does not have authority to issue an injunction. *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). An exception to this rule exists where the preliminary injunction relates to an inmate's access to the court, in which case "a nexus between the preliminary relief and the ultimate relief sought is not required[,]" and the court need not consider the merits of the underlying complaint. *Prince v. Schriro, et al.*, CV 08-1299-PHX-SRB, 2009 WL 1456648, at *4 (D. Ariz. May 22, 2009) (citing *Diamontiney v. Borg*, 918 F.2d 793, 796 (9th Cir. 1990)).

To maintain an access-to-the-courts claim, an inmate must submit evidence showing an "actual injury" resulting from the defendant's actions. *See Lewis*, 518 U.S. at 349. With respect to an existing case, the actual injury must be "actual prejudice . . . such as the inability to meet a filing deadline or to present a claim." *Id.* at 348-49. The showing required for actual prejudice is a high bar—the right of access to the courts is

only a right to bring petitions or complaints to the federal court and not a right to discover such claims or even to litigate them effectively once filed with a court. *See id.* at 354; *see also Cornett*, 51 F.3d at 898.

The constitutional right of access to the courts, however, encompasses a right to litigate without active interference. *See Silva v. Di Vittorio*, 658 F.3d 1090, 1102-03 (9th Cir. 2011) (9th Cir. 2015) ("prisoners have a right under the First and Fourteenth Amendments to litigate claims challenging their sentences or the conditions of their confinement to conclusion without *active interference* by prison officials") (emphasis in original), *overruled on other grounds by Richey v. Dahne*, 807 F.3d 1202, 1209 n.2 (9th Cir. 2015); *see Bounds v. Smith*, 430 U.S. 817, 828 (1977); *see also Lewis*, 518 U.S. at 355. This right "forbids states from erect[ing] barriers that impede the right of access of incarcerated persons." *Silva*, 658 F.3d at 1102 (internal quotation omitted). To support an active interference claim, a prisoner must allege facts showing that prison officials' actions hindered the ability to litigate and that, as a result, the prisoner suffered an actual injury. *See id.*

**IV.    Discussion**

Because Plaintiff's motion relates to his access to the court, the Court may entertain his request for injunctive relief. But Plaintiff is not entitled to relief on an access-to-courts claim because he has not alleged sufficient facts to establish actual injury. Plaintiff argues that he suffered an actual injury because he was unable to meet or request an extension to his May 16 and May 31, 2018 deadlines in the Arizona Court of Appeals, but Plaintiff does not say what he needed to file by those deadlines, how he was prevented from doing so because he did not have his property, or how specifically he was injured. (Doc. 35 at 2.) Plaintiff's claims are too vague to show "actual prejudice." *See Lewis*, 518 U.S. at 348-49. Moreover, Plaintiff stated in his "Request to Recall and/or Stay Mandate" that on May 7, 2018, he "file[d] his pleadings in the above mentioned action" and that on May 21, 2018 he received the Arizona Court of Appeals' May 1, 2018 decision. (Doc. 35 at 6.) But Plaintiff does not say what appellate court decision he

received, if he planned to appeal or seek reconsideration of that decision, when the deadline was for any such filing, or if he was prejudiced by not meeting a deadline. Moreover, if Plaintiff received the appellate court's decision on May 21, 2018, Plaintiff does not explain why he did not file his "Request to Recall and/or Stay Mandate" until June 11, 2018, even though he received his property on May 30, 2018.

Plaintiff's additional allegations that he is being prevented from litigating his claims in this action are similarly vague. Plaintiff does not allege any specific filing deadlines he has been or will be unable to meet based on his inability to access particular documents. His complaints that he is unable to swap out boxes of legal materials frequently enough to keep up with his multiple cases are also vague and conclusory and do not show more than an inconvenience. Finally, his allegations that he is being targeted for retaliatory treatment go to the merits of his claims, but absent a showing of irreparable harm, these allegations do not entitle him to the extraordinary remedy of preliminary injunctive relief.

**IT IS ORDERED** that the reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion for Special Court Order (Doc. 30) and the Motion is **denied**.

Dated this 5th day of July, 2018.

_____
David G. Campbell
United States District Judge