MGD

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| DaJuan Torrell Williams,<br><br>                     Plaintiff,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>                     Defendants. | No.  CV 17-01833-PHX-DGC (CDB)<br><br><br>**ORDER** |

Plaintiff DaJuan Torrell Williams, who is currently confined in the Yuma County Detention Center, brought this pro se civil rights action pursuant to 42 U.S.C. § 1983 challenging the Arizona Department of Corrections' (ADC) policy prohibiting prisoners from sending, receiving, or possessing "sexually explicit material or content that is detrimental to the safe, secure, and orderly operation of the facility." (Doc. 15.)  Pending before the Court is the parties' supplemental briefing regarding Plaintiff's as-applied challenge to the policy seeking injunctive relief (Docs. 119, 127, 137, 143) and Defendant Shinn's Motion for Partial Summary Judgment on the basis of exhaustion of administrative remedies (Doc. 145), which Plaintiff opposes (Doc. 154)[1].  Also pending is the Court's Order to Show Cause, to which Plaintiff has responded.  (Docs. 164, 166.)

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response to the Motion (Doc. 147).

The Court will discharge the Order to Show Cause, deny Defendant Shinn's Motion for Partial Summary Judgment on exhaustion, grant summary judgment to Plaintiff on exhaustion, and grant in part and deny in part Defendants' Motion for Summary Judgment (Doc. 65) with respect to Plaintiff's as-applied claim for injunctive relief.

## I.   Background

On screening of Plaintiff's First Amended Complaint pursuant to 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated First Amendment claims against former ADC Director Ryan and Correctional Officers Barnes, Anderson, Osler, Mangan, Williams, and Antolin.  (Doc. 17.)  The Court required Defendant Ryan to answer Counts One and Two in his official capacity and Defendants Barnes, Anderson, Osler, Mangan, Williams and Antolin to answer the claims against them in their individual capacities.[2] (*Id.*)  The Court dismissed Count Eight.  (*Id.*)

In an August 30, 2019 Order, the Court granted Defendants' Motion for Summary Judgment as to Plaintiff's facial challenge to ADC Department Order (DO) 914.07, the policy prohibiting sexually explicit material or content.  (Doc. 110.)  The Court also determined that Defendants were entitled to qualified immunity on Plaintiff's as-applied claim for damages.  (*Id.*)  The Court ordered additional briefing from the parties on Plaintiff's as-applied challenge seeking injunctive relief, requiring the parties to discuss "the specific injunctive relief Plaintiff seeks, with reference to specific excluded or redacted materials" that Plaintiff had ordered, and requiring Defendants to "state the bases for the exclusion and justify those reasons under applicable law."  (*Id.*)

During the supplemental briefing period, Defendant Shinn sought leave to move for summary judgment on the basis of exhaustion as to some of Plaintiff's as-applied claims, and the Court permitted Defendant to do so.  (Docs. 139, 144.)

On May 11, 2020, Plaintiff filed a notice of change of address indicating that he was transferred from his ADC prison to the Yuma County Detention Center where he is

---

[2] On October 1, 2019, David Shinn became ADC's Director and was automatically substituted for Ryan in his official capacity under Federal Rule of Civil Procedure 25(d). (*See* Doc. 119 at 1 n.1.)

1   awaiting criminal charges related to a 2018 incident at a Yuma prison.  (Doc. 160.)  In a
2   May 21, 2020 Order, the Court ordered Plaintiff to show cause why his remaining claim in
3   this action for injunctive relief is not rendered moot by his transfer.  (Doc. 164.)  The Court
4   permitted Defendants 10 days from the date of Plaintiff's response to file a reply.  Plaintiff
5   filed his response on June 1, 2020 (Doc. 166), but Defendants did not file a reply.

6   **II.      Plaintiff's Response to Order to Show Cause**

7           Plaintiff states that he is currently in the custody of the ADC serving a life sentence,
8   which is to be followed by a consecutive 18-year prison term.  (Doc. 166 at 1.)  According
9   to Plaintiff, he is being held in the custody of the Yuma County Sheriff's Office awaiting
10  trial on a criminal indictment, but this transfer of custody is only temporary and will not
11  alter his life sentence in the custody of ADC.  (*Id*.)  Plaintiff states that he has not been
12  released or discharged from ADC jurisdiction and that all of his personal property remains
13  at ADC and is being held in "out to court" storage at Arizona State Prison Complex
14  (ASPC)-Eyman/SMU II, where Plaintiff will be returned following the disposition of his
15  criminal matter.  (*Id*.)  Plaintiff therefore requests that his claims for injunctive relief not
16  be dismissed as moot.  (*Id*. at 2.)

17          Plaintiff's Response is sufficient to discharge the Order to Show Cause.  A review
18  of the ADC website lists Plaintiff's most recent location as ASPC-Eyman, noting that his
19  last movement was on April 17, 2020 and that Plaintiff was "Out to Court."[3]  The website
20  reflects that on September 16, 1999, Plaintiff received a life sentence for conspiracy to
21  commit murder in the first degree along with 19-year sentences for attempt to commit
22  murder in the first degree and burglary in the first degree in Coconino County Superior
23  Court case #98609.  In 2000, Plaintiff received an 18-year sentence for promoting prison
24  contraband in Maricopa County Superior Court case #20000006948.  Because Plaintiff
25  remains in ADC custody, his claim is not moot.

26  / / /

27  ─────────────────────

28          [3] *See* ADC Inmate Datasearch at https://corrections.az.gov/public-resources/inmate-datasearch (search Inmate Number "124345") (last visited June 29, 2020).

### III.   Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute, that the fact in contention is material (a fact that might affect the outcome of the suit under the governing law), and that the dispute is genuine (the evidence is such that a reasonable jury could return a verdict for the nonmovant). *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968), but it must "come forward with specific facts showing that there is a genuine issue for trial," *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted). *See* Fed. R. Civ. P. 56(c)(1). The court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### IV.   Exhaustion

#### A.   Legal Standard

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in

accordance with the applicable rules.  *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006).  Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it.  *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37.  Once that showing is made, the burden shifts to the prisoner to show either that he exhausted administrative remedies or that generally available administrative remedies were "effectively unavailable to him."  *Albino*, 747 F.3d at 1172.  The ultimate burden rests with the defendant.  *Id.*  Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust.  *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion.  *Albino*, 747 F.3d at 1170-71.  But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits.  *Id.* at 1171.

**B.      Facts Relevant to Exhaustion**

**1.      Publication Review Process**

As described in the Court's August 30, 2019 Order, DO 914 sets forth the procedure for receipt, screening, and delivery of mail at ADC and what types of publications are prohibited.  (Doc. 110 at 6.)  DO 914.07, entitled "Unauthorized Content," provides:

> In order to assist with rehabilitation and treatment objectives, reduce sexual harassment and prevent a hostile environment for inmates, staff and volunteers, inmates are not permitted to send, receive or possess sexually explicit material or content that is detrimental to the safe, secure, and orderly operation of the facility as set forth in this Department Order.

(DO 914.07 § 1.1 (Doc. 62-1 at 28).)  "Sexually explicit material" is defined to include "any publication, drawing, photograph . . . the cover or contents of which pictorially or textually depicts nudity of either gender, or homosexual, heterosexual, or auto-erotic sex acts[.]"  (Doc. 62-1 at 35.)  Prohibited publications include those depicting nudity of either gender; contact with another person's unclothed genitals, pubic area, buttocks, or female breast; sadomasochistic abuse, sexual intercourse, masturbation, or incest; or sexual activity with an unwilling participant or child.  (DO 914.07 §§ 1.2.1–1.2.2.6 (Doc. 62-1 at 28).)  DO 914 also prohibits:

> Content in publications, photographs, drawings, or in any type of image or text that may, could reasonably be anticipated to, could reasonably result in, is or appears to be intended to cause or encourage sexual excitement or arousal or hostile behaviors, or that depicts sexually suggestive settings, poses or attire, and/or depicts sexual representations of inmates, correctional personnel, law enforcement, military, medical/mental health staff, programming staff, teachers or clergy.

(*Id.* § 1.2.17 (Doc. 62-1 at 29).)

ADC's Office of Publication Review (OPR) manages the Publication Review Database, which is a statewide database containing information about all publications allowed or rejected by mailroom staff.  (Doc. 110 at 6.)  Designated staff at each prison complex review incoming magazines and publications sent through the mail.  (*Id.*)  If publication review staff conclude that a publication sent to a prisoner should be excluded under DO 914, or has been previously excluded, the prisoner and the publication's publisher are notified of the decision and that they have 30 days to appeal the decision.  (Doc. 146 ¶ 1.)  The notice is sent from the complex mail room staff within 14 days of the decision to exclude a publication and is titled "Office of Publication Review – Notice of Result"; the notice identifies the section of DO 914 violated and the offending material, although sometimes that offending material "is mistakenly not listed."  (Doc. 137-1 at 4 ¶ 9; DO 914.08 § 1.2 (Doc. 62-1 at 30).)  DO 914 states that prisoners may submit their

appeals via Inmate Letter, Form 916-1, within 30 days of receipt of the notice of exclusion. (DO 914.08 § 1.2.2.1 (Doc. 62-1 at 30).)

OPR reviews appeals by prisoners or publishers.  (Doc. 146 ¶ 2.)  OPR may decide to allow the publication with redactions of unauthorized content, overturn the publication's exclusion by staff and allow the publication in its entirety, or uphold the exclusion of the publication in its entirety.  (*Id.*)  Only OPR can redact unauthorized content and allow a redacted publication.  (*Id.*¶ 3.)  The prisoner or publisher who has filed an appeal is notified of OPR's appeal decision, and OPR logs the page number, paragraph, and any content that is redacted or excluded.  (*Id.* ¶ 6.)  Under DO 914.08 § 1.2.2.5, appeal decisions made by OPR are final and constitute exhaustion of administrative remedies.  (*Id.* ¶ 7.)

If multiple prisoners order the same publication and it is excluded by publication review staff, all copies of the same publication are excluded.  (*Id.* ¶ 4.)  Only prisoners who appeal will receive the publication if OPR allows it with or without redactions.  (*Id.*)  Prisoners who do not appeal do not benefit from OPR's decision regarding a successful appeal.  (*Id.*)  If a publisher's appeal results in the publication being allowed with or without redactions, all prisoners who ordered the publication will receive it.  (*Id.*)

If an excluded publication is not appealed or once a publication is excluded by OPR, prisoners have 90 calendar days to notify designated staff of the desired disposition of the publication.  (*Id.* ¶ 8.)  If the prisoner fails to do so, the property is processed as unclaimed property and disposed of as outlined in DO 914.7.0.  (*Id.*)  Prisoners can choose to have their excluded property returned to the sender, sent to a third party outside the prison, or destroyed.  (*Id.* ¶ 9.)

### 2. Plaintiff's Publications and Appeals

Plaintiff ordered four books – *Seduction's Spell*, *Decadence*, *Pleasure Control*, and *The Forever Kiss* – that were excluded and withheld by ADC publication staff.  (*Id.* ¶ 10.)  According to Defendant, Plaintiff did not appeal the decisions to exclude these books.  (*Id.*)  Defendant further contends that Plaintiff did not appeal the exclusion or redaction decisions of the following magazines: the September and December 2016 and January and February

2017 issues of *Elle*; the November and December 2016 and January, February and March 2017 issues of *Cosmopolitan*; or the March 2017 issue of *Harper's Bazaar*. (*Id.* ¶¶ 11-12.) Although the October 2014 issue of *Prison Legal News* (*PLN*) was initially excluded, OPR reversed the exclusion of the publication, and Plaintiff received the publication with two redactions.[4] (*Id.* ¶¶ 13-15.)

Plaintiff disputes Defendant's paragraphs 10-15 and submits evidence showing his appeal efforts. (Doc. 155 at 1, citing Exhibits A through S4.) Although several of Plaintiff's exhibits are difficult to read due to the faintness of the photocopies, the Court will summarize them to the extent they are legible and list them in chronological order.[5]

- Exhibit R: Plaintiff's November 1, 2014 Inmate Letter to OPR regarding the exclusion of the October 2014 issue of *PLN*. Plaintiff stated that "the contrabanding of the publication in question is an active attempt by the prisons to prevent inmates' access to courts and to hinder any chances of constitutional violations being brought in court against this administration."[6] (*Id.* at 38.)

- Exhibit B2: A March 30, 2016 OPR Notice of Result notifying Plaintiff that *The Forever Kiss* was excluded due to "Sexual Intercourse, Fellatio, Cunnilingus, Bestiality or Sodomy." The form noted that Plaintiff had 30 days to appeal the decision by sending an Inmate Letter to the "Complex/Unit Publication Review Staff." The form advised that OPR "may decide to allow the publication by removing or redacting unauthorized material."[7] (*Id.* at 7.)

---

[4] Although Plaintiff's claims include non-nude photographs and two booklets titled *XXX Adult Stories: Burning Desires*, and *XXX Adult Stories: A Bride for the Whole Family*, Defendant does not contend that Plaintiff did not exhaust his administrative remedies with respect to those items. (*See* Doc. 139 at 1 n.1 (asserting that if Plaintiff's claims regarding the books, magazines and the October 2014 issue of *PLN* are dismissed for failure to exhaust, the only remaining as-applied claims would involve the photographs and the two XXX pamphlet-style books).)

[5] Because Defendants do not argue Plaintiff did not exhaust his administrative remedies with respect to the photographs and two XXX booklets, the Court will not include Plaintiff's evidence regarding those items.

[6] Plaintiff subsequently filed grievances related to the exclusion of the October 2014 *PLN*, but the Court will not set forth those grievances as they are not relevant to the OPR's administrative remedy process.

[7] This same advisory about appeals and potential redaction is on all of the Notices of Result Plaintiff received and has submitted to the Court.

- Exhibit B: Plaintiff's April 14, 2016 Inmate Letter to "Central Office-Publication Review c/o Florence Complex Mail Room Publication Review" appealing the exclusion of *The Forever Kiss*.  Plaintiff concludes by stating that under no circumstances does he consent to anyone destroying, altering, or redacting his personal property.[8]  (*Id*. at 6.)

- Exhibit A: Plaintiff's April 14, 2016 Inmate Letter to "Central Office-Publication Review c/o Florence Complex Mail Room Publication Review" appealing the decision to exclude *Seduction's Spell*, *Decadence*, and *Pleasure Control*.  Plaintiff states that he did not receive the "Notice of Result" form required by policy but only received the contraband form that his books were excluded.  (*Id*. at 5.)

- Exhibit D2: An August 16, 2016 OPR Notice of Result notifying Plaintiff that his September 2016 issue of *Elle* was excluded due to nudity.  (*Id*. at 11.)

- Exhibit D: Plaintiff's October 17, 2016 Inmate Letter to OPR appealing the decision to exclude the September 2016 issue of *Elle*.  Plaintiff stated that under DO 909 items that are modified from their original appearance or altered are deemed "unauthorized property" or contraband and will be seized.[9]  (*Id*. at 10.)

- Exhibit H: Plaintiff's October 17, 2016 Inmate Letter to OPR appealing the decision to exclude the November 2016 issue of *Cosmopolitan*.  (*Id*. at 18.)

- Exhibit I2: A November 15, 2016 OPR Notice of Result notifying Plaintiff that his December 2016 issue of *Cosmopolitan* was excluded due to "Sexual Intercourse, Fellatio, Cunnilingus, Bestiality or Sodomy" and "Encourage Sexual or Hostile Behaviors."  (*Id*. at 20.)

- Exhibit E2: A November 15, 2016 OPR Notice of Result notifying Plaintiff that his December 2016 issue of *Elle* was excluded due to nudity.  (*Id*. at 13.)

- Exhibit I: Plaintiff's December 13, 2016 Inmate Letter to Complex/Unit Publication Review Staff appealing the decision to exclude the December 2016 issue of *Cosmopolitan.*  (*Id*. at 19.)

---

[8] Plaintiff concludes every Inmate Letter regarding his publications with the statement that he does not consent to his publications being altered, redacted or destroyed and the Court will not further note each instance.

[9] Plaintiff includes this same statement about DO 909 in all of his subsequent Inmate Letters regarding the exclusion of his publications along with his notice that he does not consent to altering, redacting or destroying his publications.

- Exhibit E: Plaintiff's December 13, 2016 Inmate Letter to Complex/Unit Publication Review Staff appealing the decision to exclude the December 2016 issue of *Elle*.  (*Id*. at 12.)

- Exhibit U: Plaintiff's December 13, 2016 Informal Complaint Resolution stating that he never received responses or decisions to his Publication Review Appeals regarding *The Forever Kiss*, *Seductions Spell*, *Decadence*, and *Pleasure Control* or the September and December 2016 issues of *Elle* and the November and December 2016 issues of *Cosmopolitan*.  Plaintiff asked why the publication review appeal process was not being followed and why was he not receiving responses to his appeals.  (*Id*. at 46.)

- Exhibit U2: A note on the bottom of Plaintiff's December 13, 2016 Informal Complaint Resolution from CO II Mangan states: "I never received a publication review request for appeal, but the books have been excluded for quite some time (2012) and could not be appealed anyway" and "[a]ll of these publication[s] have been requested for appeal (by another I/M [inmate]) so I am waiting for their disposition still."  (*Id*. at 47.)

- Exhibit F: Plaintiff's December 22, 2016 Inmate Letter to Complex/Unit Publication Review Staff appealing the decision to exclude the January 2017 issue of *Elle*.  (*Id*. at 14.)

- Exhibit F2: A January 10, 2017 Inmate Letter Response from Sergeant J. Ramos regarding Plaintiff's December 22, 2016 appeal of the exclusion of *Elle* informing Plaintiff that the magazine had been excluded in two other facilities and would not be forwarded to Plaintiff until the OPR has reviewed it.  Ramos noted that Plaintiff said he would not accept any publication with redactions and Ramos informed Plaintiff that "if the OPR decision i[s] to have the publication in parts, redacted, your publication will then become contraband and Department Order 909.07 Contraband Seizure and Disposition will be followed."  (*Id*. at 15.)

- Exhibit G2: A January 17, 2017 OPR Notice of Result notifying Plaintiff that his February 2017 issue of *Elle* was excluded due to nudity, sadomasochistic abuse, "Promotion/Instructions for Brewing Alcohol, Manufacturing/Cultivation of Drugs, Narcotics, Poisons," and "Encourage Sexual or Hostile Behaviors."  (*Id*. at 17.)

- Exhibit K: Plaintiff's January 22, 2017 Inmate Letter to Complex/Unit Review Staff appealing the decision to exclude the February 2017 issue of *Cosmopolitan*.  (*Id*. at 22.)

- Exhibit G: Plaintiff's January 29, 2017 Inmate Letter to Complex/Unit Publication Review Staff regarding the exclusion of the February 2017 issue of *Elle*.  (*Id*. at 16.)

- Exhibit J: Plaintiff's January 29, 2017 Inmate Letter to Complex/Unit Publication Review Staff appealing the decision to exclude the January 2017 issue of *Cosmopolitan*.  (*Id*. at 21.)

- Exhibit L2: A February 7, 2017 OPR Notice of Result notifying Plaintiff that his March 2017 issue of *Cosmopolitan* was excluded due to nudity and encouraging sexual or hostile behaviors.  (*Id*. at 24.)

- Exhibit L: Plaintiff's March 12, 2017 Inmate Letter to Complex/Unit Publication Review Staff appealing the decision to exclude the March 2017 issue of *Cosmopolitan*.  (*Id*. at 23.)

- Exhibit M: Plaintiff's April 3, 2017 Inmate Letter to Complex/Unit Publication Review Staff appealing the decision to exclude the March 2017 issue *of Harper's Bazaar*.  (*Id*. at 25.)

- Exhibit V: Plaintiff's May 2, 2017 Inmate Letter to Complex/Unit Publication Review Staff stating that he had filed Publication Review Appeals on every publication he had ordered since 2016 that had been contrabanded but only received appeal decisions for his February 2017 issue of *Cosmopolitan* and his non-nude photo catalog thumbnail page.  Plaintiff asked that he be provided the appeal decisions for his other publications that he appealed and lists them as four novels he appealed in April 2016—*Seduction's Spell*, *Decadence*, *Pleasure Contr*ol, and *The Forever Kiss*; the September and December 2016 and January and February 2017 issues of *Elle*, which he appealed in 2016 and 2017; the November and December 2016 and January, February and March 2017 issues of *Cosmopolitan*, which he appealed in 2016 and 2017; the March 2017 issue of *Harper's Bazaar*, which he appealed in April 2017; and 26 non-nude photographs, which he appealed in February 2017.  (*Id*. at 48.)

- Exhibit V2: A note on Plaintiff's May 2, 2017 Inmate Letter states "I have forwarded this to Central Unit property.  They have sent you copies as requested."  (*Id*.)

- Exhibit M2: A July 13, 2017 Inmate Letter Response stating: "Contraband #A01-17-215 [March 2017 *Harper's Bazaar*] You did not mark to hold for 2nd review. But a lot of the magazines in the past you have been requesting for 2nd review. On the Appeal Decision the review board has allowed with redactions for you to have the magazine. There are 5 pgs that will be redacted. Please let mail and property know if you want the magazine with redactions."  (*Id*. at 26.)

- Exhibit M3: Plaintiff's July 16, 2017 Inmate Letter to CO II Lockhart stating that Plaintiff has received Lockhart's response that Plaintiff would be allowed the March 2017 issue of *Harper's Bazaar* with 5 pages of redactions.   Plaintiff wrote, "However, No **I do not want** any pages torn out-redacted out, of my magazine please." (*Id*. at 27 (emphasis in original).)

## C.   Discussion

Defendant Shinn argues in his Motion that Plaintiff did not exhaust his available administrative remedies as to the books and magazines that are the subject of this lawsuit because he never appealed the publication decisions to the OPR.  (Doc. 145 at 6.)  Plaintiff responds that he filed Publication Review Appeals for all publications at issue and exhausted his available administrative remedies.  (Doc. 154.)  Defendant replies that while Plaintiff "did submit what he considers appeals to OPR," because Plaintiff indicated on nearly all submissions that he would not allow the publications to be redacted, and redaction is one of the options OPR employs, Plaintiff "failed to strictly comply with ADC's exhaustion procedures and has therefore not exhausted his administrative remedies."  (Doc. 159 at 2.)  Defendant argues that Plaintiff, by refusing redaction, "preemptively refused an OPR decision that would have redacted a portion of his publication,' which prevented OPR from making decisions[.]"  (*Id*. at 9-10.)

Defendant does not dispute that Plaintiff filed appeals of the books, magazines. and the October 2014 issue of *PLN* at issue in this case.  Even if Defendant believed those appeals to be insufficient, Defendant did not present those appeals with his Motion or argue that they were insufficient.  Defendant instead waited until Plaintiff demonstrated that he had filed the appeals and then, in reply, argued that they were insufficient.  The Court will not consider arguments raised for the first time in a reply brief.  *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009) (per curiam); *United States v. Anderson*, 472 F.3d 662, 668 (9th Cir. 2006); *Martinez-Serrano v. INS* , 94 F.3d 1256, 1259 (9th Cir. 1996).  For that reason alone, the Court will deny summary judgment to Defendant on exhaustion.

Moreover, Defendant does not cite any case holding that a prisoner fails to exhaust if he refuses to accept an available remedy.  Plaintiff followed the ADC publication review

process and submitted appeals to OPR for each of the publications at issue in this case. Plaintiff exhausted his available administrative remedies with respect to those publications.

The Court will deny Defendant's Motion for Partial Summary Judgment and will grant summary judgment to Plaintiff on the issue of exhaustion.  *See Albino*, 747 F. 3d at 1176 (stating that where a defendant moves for summary judgment based on failure to exhaust under the PLRA and has failed to show a genuine dispute of fact on the issue of exhaustion, it is appropriate for the court to grant summary judgment sua sponte for the nonmovant on the issue).

## V.    First Amendment Supplemental Briefing

### A.    Legal Standard

In its prior Order granting summary judgment to Defendants on Plaintiff's facial challenge to DO 914.07, the Court applied the four-part test announced in *Turner v. Safley*, 482 U.S. 78 (1987).  That test requires the Court to consider (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest the regulation is designed to protect; (2) whether the prisoner has alternative means of exercising the right at issue; (3) the impact any accommodation would have on guards, other inmates, and allocation of prison resources; and (4) whether there are "ready alternatives" for furthering the government interest, which would suggest that the regulation is an exaggerated response to the jail's concern.  *Turner*, 482 U.S. at 89-90.  In determining that DO 914.07 was facially constitutional, the Court found that there was a rational relationship between the policy and ADC's objectives of rehabilitation, treatment, security, and the avoidance of sexual harassment.  (Doc. 110 at 10.)  The Court likewise found that Defendants had met their burden as to the other three factors and that Plaintiff failed to raise a genuine issue of material fact with respect to each of those factors.  (*Id*. at 11–14.)

"The *Turner* analysis applies equally to facial and 'as applied' challenges." *Bahrampour v. Lambert*, 356 F.3d 969, 975 (9th Cir. 2004) (citation omitted).   In determining whether a facially valid prison regulation is unconstitutional as applied, the

court examines "whether applying the regulation to that speech—whatever its value—was rationally related to the legitimate penological interest asserted by the prison." *Hargis v. Foster*, 312 F.3d 404, 410 (9th Cir. 2002).

Courts must give "substantial deference to the professional judgment of prison administrators." *Beard v. Bank*, 548 U.S. 521, 528 (2006) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).  A court does not have to agree with the officials' proffered legitimate penological interest. *Frost v. Symington*, 197 F.3d 348, 354–55 (9th Cir. 1999) (citing *Turner*, 482 U.S. at 89).  The inquiry under *Turner* is not whether the policy actually serves a penological interest, but rather whether it was rational for jail officials to believe it would. *Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th Cir. 1999) ("prison officials need not prove that the banned material actually caused problems in the past, or that the materials are 'likely' to cause problems in the future") (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 417 (1989)).  To prevail in an as-applied challenge, a prisoner "must overcome the presumption that the prison officials acted within their broad discretion." *Shaw v. Murphy*, 532 U.S. 223, 232 (2001) (internal citation and quotation omitted).

## B.   Supplemental Briefing

### 1.   Plaintiff's Books

Plaintiff's as-applied challenge seeks delivery to him of the four books mentioned above: *Seductions Spell*, *Decadence*, *Pleasure Control*, and *The Forever Kiss*.  (Doc. 117 at 1.)  Plaintiff's copies of those books arrived at the prison in April 2016 and Plaintiff appealed their exclusion on April 14, 2016.  (Doc. 15-1 at 12; Doc. 155 at 5.)  Plaintiff asserts that these novels are not "sexually explicit," pose no legitimate threat to the prison, and are only "sexually related material," which he argues is allowed under DO 914.[10]  (Doc. 117 at 1, 4 (citing Doc. 65 at 5-6).)

In their prior summary judgment briefing, Defendants presented the Declaration of Diane Miller, who is the Administrative Services Officer within ADC's OPR.  (Doc. 62-1

---

[10] Plaintiff also contends that he does not have access to any of the excluded materials in order to review them and he has been prejudiced by this and by the denial of counsel.  (Doc. 117 at 3.)

at 55 ¶ 1.)  Miller reviewed the Publication Review Database (PRD) and determined that *Seduction's Spell* was excluded on April 30, 2014 by C. Antolin; *Decadence* was excluded on January 1, 2016 by E. Franco; and *Pleasure Control* was excluded on July 11, 2012 by Florence.[11]  (*Id*. at 57 ¶ 13.)  Miller did not find any information in the PRD about *The Forever Kiss*.  (*Id*.)

In a supplemental Declaration, Miller states that due to time and personnel restraints, books are not read as part of publication review to determine if there is restricted content, but Publication Review staff "are instructed to search for book descriptions and plot summaries on the internet, for example on amazon.com, to help determine is a book contains restricted content under DO 914."  (Doc. 122-1 at 3 ¶ 7.)  Defendant does not submit the books that were withheld from Plaintiff for the Court to review, but provides descriptions of the books from amazon.com.  *Seduction's Spell* is described as "an erotic romance" set in a North Texas resort, which is a "sexy antebellum mansion [that] is a[n] erotic palace of pleasure and passion."  (Doc. 122-1 at 7.)  *Decadence* is described as an "intimately private club," where the protagonist "submits to an abundance of sensual experiences she previously could only have imagined."  (*Id*. at 7–8.)  *Pleasure Control* is described as "an erotic romp" involving a "straight-laced scientist" working "to create a drug to calm the libidos of men who've overdone the Viagra, only to find herself swept up in unexpected sexual adventures with a coworker."  (*Id*. at 8.)  The protagonist in *The Forever Kiss* is described as a penniless soldier who "enters a world of unimagined privilege and wealth, where every decadent craving is gratified, every erotic fantasy is fulfilled," and where a woman "has the power to destroy him—when she isn't bringing him to his knees with her warm, willing sensuality."  (*Id*. at 15.)

Defendant argues that the books "are all sexually explicit and a jury could not reasonably conclude that prison officials acted unreasonably in applying ADC's

---

[11] Miller states in a separate Declaration that *Seduction's Spell* and *Decadence* were excluded based on purchases by prisoner(s) other than Plaintiff.  (Doc. 137-1 at 6 ¶ 24.) As noted, Defendants contend that Plaintiff did not appeal the exclusion of those books, despite evidence that Plaintiff did submit publication appeals.

- 15 -

publication [] policy to them." (Doc. 119 at 5.) Defendant contends these publications "unambiguously are covered" by DO 914.07 §§ 1.2.2.1 ("physical contact by another person with a person's unclothed genitals, pubic area, buttocks or, if such person is a female, breast"), § 1.2.2.3 ("sexual intercourse, vaginal or anal, fellatio, cunnilingus, bestiality or sodomy") and perhaps § 1.2.2.4 ("masturbation, excretory functions, and lewd exhibition of the genitals"). (*Id*. at 6.)

As noted above, the Court must give "substantial deference to the professional judgment of prison administrators," *Beard*, 548 U.S. at 528, and the relevant inquiry is not whether the policy actually serves a penological interest, but whether it was rational for jail officials to believe it would, *Mauro*, 188 F.3d at 1060. The Court concludes that it was not irrational for Defendant to rely on published summaries of the books rather than requiring prison employees to read each of them, and, based on the amazon.com descriptions, that it was rational for prison officials to believe the books violated DO 914.07 and that exclusion of them served a legitimate penological purpose. *Hargis*, 312 F.3d at 410. To prevail on his as-applied challenge, Plaintiff "must overcome the presumption that the prison officials acted within their broad discretion." *Shaw*, 532 U.S. at 232. His unsupported argument that the books are not sexually explicit is not sufficient to overcome the presumption, particularly in light of the book descriptions relied on by Defendant. Accordingly, the Court will grant summary judgment to Defendant with respect to *Seduction's Spell*, *Decadence*, *Pleasure Control*, and *The Forever Kiss*.

### 2.    Plaintiff's XXX Booklets

Plaintiff states that based on the Court's prior ruling, he does not believe that injunctive relief is available for his excluded publications *XXX Adult Stories: Burning Desires* and *XXX Adult Stories: A Bride for the Whole Family*. (Doc. 117 at 1-2.) Plaintiff states that he "objects on the matter and preserves his right to review on appeal in the matter." (*Id*. at 2.)

Because Plaintiff appears to concede that the two XXX booklets are legitimately excluded under DO 914 and he no longer pursues injunctive relief for those publications, the Court will grant summary judgment to Defendants as to the two XXX booklets.

### 3.     Plaintiff's Photographs

Plaintiff wants to receive 26 "non-nude" photographs excluded in January 2017, one page from a "non-nude" photograph catalog from EPS excluded in January 2017, one page from FIYA Girls containing non-nude photographs, and five pages of "non-nude" photographs from Picture Kingz (sic) excluded in September 2017.[12]  (Doc. 117 at 2–3.)  Plaintiff asserts that these items are not "sexually explicit," but are only "sexually related material."  (*Id.*)

Miller asserts that complex publication staff excluded 8 photos from FIYA Girls per DO 914.07 §§ 1.2.1 and 1.2.17, and OPR concurred with the complex exclusion.[13]  (Doc. 137-1 ¶ 40.)  Staff excluded 5 pages of thumbnail photo sheets from Picture Kingz under DO 914.07 §§ 1.2.1, 1.2.2.1, and 1.2.17. and OPR concurred with the complex exclusion.[14]  (*Id.* ¶ 41.)  And staff excluded one thumbnail photo page from EPS under DO 914.07 §§ 914.07 §§ 1.2.1, 1.2.17, and OPR concurred with the exclusion.[15]  (*Id.* ¶ 42.)

The Court has reviewed the 8 photos from FIYA Girls and finds that prison officials could have concluded that they come within DO 914.07 §§ 1.2.1 or 1.2.17 and reasonably believed that exclusion of the photos served a legitimate penological purpose.  DO 914.07 § 1.2.1 prohibits publications that depict nudity of either gender.  "Nudity" is defined with reference to Arizona Revised Statutes § 13-3501 as "the showing of the human male or

---

[12] In his First Amended Complaint, Plaintiff does not mention the 26 non-nude photographs, but asserts only that a thumbnail page from EPS, a thumbnail sheet from FIYA Girls, and thumbnail photos from Picture Kingz were excluded.  (Doc. 15-1 at 7.)

[13] These photos were submitted for in-camera review.  (*See* Doc. 131, Bates Nos. WILLIAMS 000056–WILLIAMS 000059.)

[14] These thumbnail photo sheets were also submitted for in-camera review.  (*See* Doc. 131, Bates No. WILLIAMS 000060–WILLIAMS 000064.)

[15] This thumbnail photo page was not in the exhibits submitted for in-camera review and the Court did not locate them elsewhere in the record.

female genitals, pubic area, female breast with less than a fully opaque covering of the nipple, or male or female buttocks with less than a full opaque covering of the anus (e.g., a thong).  The anus does not need to be visible."  Section 1.2.17 is the more general prohibition against content that may cause or encourage sexual excitement or arousal or hostile behaviors or depicts sexually suggestive settings, poses or attire, among other things.  Four of the photos (#s 2, 3, 4, 5) depict women from behind wearing thongs that do not cover the buttocks at all, thus coming within both §§ 1.2.1 and 1.2.17.  While the women in the other four photos are wearing more than a thong, they are in poses that can be viewed as sexually suggestive or intended to cause arousal, and it was rational for prison officials to believe their exclusion fell within the general prohibition of § 1.2.17 and serves a legitimate penological interest.  *Mauro*, 188 F.3d at 1060.  Thus, the Court will grant summary judgment to Defendant as to the eight photos from FIYA Girls.

The Court will likewise grant summary judgment to Defendants as to the five pages of thumbnail photos from Picture Kingz.  Although some of the thumbnail photos are very small and the pages submitted to the Court are photocopies, they are clear enough for the Court to conclude that prison officials could have rationally concluded that they come within DO 914.07 §§ 1.2.1 or 1.2.17 and reasonably believed that exclusion of the photos served a legitimate penological purpose.  There are 38 thumbnail photos on WILLIAMS 00060 (titled "AZZ fo DAYZ Flyer 1") and all depict women from behind or slightly turned with most wearing thongs that do not cover the buttocks at all and a few are possibly nude or not wearing bottoms.  There are 43 thumbnail photos on WILLIAMS 000061 (titled "BBW Flyer 1") showing women from behind who are possibly nude or wearing thongs that do not cover the buttocks at all, or from the front wearing lingerie, bikinis, or with bared breasts, or in sexually suggestive poses.  There are 46 thumbnail photos on WILLIAMS 000062 (titled "Cameltoe Flyer 4") showing women in sexually suggestive poses wearing lingerie, bikinis, or thongs, and some appear to show bare breasts and bare buttocks.  There are 44 thumbnail photos on WILLIAMS 000063 ("Celebrity Flyer 7") depicting frontal shots of women in sexually suggestive poses and wearing either bikinis

or lingerie and some appear to be nude or possibly not wearing a top or bottom.  There are 40 thumbnail photos on WILLIAMS 000064 ("Monster Black Booty Flyer 3") showing women from behind or slightly turned wearing thongs that do not cover the buttocks at all or with completely bare buttocks and two thumbnail photos show two women close together wearing thongs or with bare buttocks.  Accordingly, the Court will grant summary judgment to Defendants as to the five pages of thumbnail photos from Picture Kingz.

Defendants did not submit the one page of thumbnail photos from EPS for the Court's review.  Accordingly, Defendants have not met their burden at summary judgment and the Court will deny summary judgment to Defendants as to the one page of thumbnail photos from EPS.

### 4.     **Plaintiff's Magazines**

Plaintiff seeks delivery of the September and December 2016 and January and February 2017 issues of *Elle*, the March 2017 issue of *Harper's Bazaar*, and the November and December 2016, and January, February and March 2017 issues of *Cosmopolitan*. (Doc. 117 at 2.)  Plaintiff asserts that these magazines are not "sexually explicit," pose no danger to the prison, and are lawfully sold to minors.  (*Id*.)

### a.     *Elle*

Miller states that the September and December 2016 and January 2017 issues of *Elle* were provided with redactions to another prisoner who appealed the exclusion of those issues, but that Plaintiff did not appeal and so did not receive the redacted issues. (Doc. 137-1 ¶¶ 29–31.)  All redactions were made pursuant to DO 914.07 §§ 1.2.1 (nudity) and 1.2.17 (sexually suggestive settings, poses or attire, etc.).[16]  (*Id*.)

The September 2016 *Elle* was redacted on pages 194 and 195.  (*Id.* ¶ 29.)  The Court has reviewed the pages Defendant has identified as violating DO 914.07.[17]  The Court

---

[16] Defendant submitted the magazines on a CD for in-camera review.

[17] The publisher has not numbered all magazine pages, particularly the advertising pages, and the Court presumes that the page numbers identified by Defendant refer to the computer-generated page numbers at the bottom of each page that begin "chrome-extension:// . . . ."  Further confusing the analysis is the fact that the same page number is often found on what appear to be two different pages.  The September 2016 issue of *Elle*

agrees that prison officials could rationally believe that the second page 194 showing a semi-nude torso violated DO 914.07 and that exclusion of the photo served a legitimate penological purpose. *See Mauro*, 188 F.3d at 1060. But the prior page, also identified as page 194, shows a fully clothed woman sitting atop a balloon, and no rational official would find that the photo violated DO 914. Therefore, the Court will deny summary judgment to Defendant as to the first page 194 and grant summary judgment as to the second page 194.

The December 2016 *Elle* was redacted on pages 94, 238–239, 257 and 285. (Doc. 137-1 at 7 ¶ 30.) The Court also agrees that prison officials could reasonably believe that the following redactions were reasonably related to penological objectives: an article on pages 283-239 and 285 reviewing a television series and a book with somewhat graphic descriptions of sexual activity and an advertising photo on page 257 showing a bare-legged woman in cowboy boots and lacy underwear. Tt is not clear what on page 94 violates DO 914.07. All the models on that page are fully clothed and the text is not sexually suggestive. Therefore, the Court will grant summary judgment to Defendant as to the redactions in December 2016 *Elle* except for page 94.

The January 2017 *Elle* was redacted on pages 130 and 138. (Doc. 137-1 ¶ 31.) A prison official could reasonably conclude that those pages violated DO 914.07 and that their exclusion served a legitimate penological purpose. One photo on page 130 shows a fully clothed woman with a very sheer top that may reveal a nipple, although that is not entirely clear. The other photo on page 138 shows three models (two men and one woman) intertwined in what could reasonably be considered a sexually suggestive pose. Therefore, the Court will grant summary judgment to Defendants as to the redactions in the January 2017 *Elle*.

Miller states that the February 2017 *Elle* was excluded per DO 914.07 §§1.2.1 (nudity), 1.2.2.2 (sadomasochistic abuse), 1.2.7 (depictions, etc. of drug paraphernalia or instructions for manufacturing alcohol or drugs), and 1.2.17 (sexually suggestive settings, poses or attire, etc.). (Doc. 137-1 ¶ 32.) But Miller does not identify which pages in the

does not have a page 195 but has two pages 194.

February 2017 *Elle* were in violation of DO 914.07.  Because Defendant did not identify what pages violate DO 914.07, there is a genuine issue of material fact whether prison official could reasonably conclude that anything in the February 2017 issue of *Elle* violated DO 914.07.  The Court will deny summary judgment to Defendant as to the February 2017 issue of *Elle*.

### b.  *Harper's Bazaar*

Miller states in her Declaration that the March 2017 issue of *Harper's Bazaar* was allowed by the OPR with redactions on pages 51, 59, 172, 258, 362, 365, which she asserts were in violation of DO 914.07 §§ 1.2.1 and 1.2.17.  (Doc. 137-1 ¶ 38.)  The redacted issue was delivered to a prisoner who appealed the initial exclusion, but not Plaintiff.  (*Id.*)

The Court did not locate a page 51 in the issue.  A prison official could reasonably believe that the advertising photos on pages 59, 172 and 365 (i.e., the second page 364) violate DO 914 and their exclusion was rationally related to a legitimate penological purpose because in one photo a woman's nipples are visible through a sheer top, another photo is a side view of a nude woman, and the photos on page 365 show all but the nipple of a woman's breast.  The advertisement on page 258 shows a couple in what could be considered a sexually suggestive pose and on page 362 one of the models shown could reasonably be viewed as sitting in a sexually suggestive pose.  The Court will therefore grant summary judgment to Defendants as to the redactions in the March 2017 issue of *Harper's Bazaar*.

### c.  *Cosmopolitan*[18]

Miller states that the November 2016 *Cosmopolitan* was excluded by OPR based on violations of DO 914.07 §§1.2.1, 1.2.2.3, 1.2.2.4, 1.2.7, and 1.2.17 on pages 40, 44–45, 128–129, 141–142, 147, and 198–199.  (Doc. 137-1 ¶ 33.)  A prison official could reasonably believe that the following items violated DO 914.07 and their exclusion was rationally related to a legitimate penological purpose: the first page 40 and its description

---

[18] For each of the issues of *Cosmopolitan* withheld from Plaintiff, Miller states that another prisoner appealed the exclusion of the magazines, but not Plaintiff, presumably meaning the other prisoner was provided with redacted issues Plaintiff did not receive.

of sex acts; page 44's image of woman with a bikini bottom and no top; products on page 45 depicting genitalia; the illustrations of couples engaged in sexual activity on pages 128–129; the photo of a nude woman on page 141; the description of masturbation and a sex toy on page 142; the discussion of erections on page 147, and the nude and/or sexually suggestive photos on pages 198-199.  Accordingly, the Court will grant summary judgment to Defendant as to the November 2016 *Cosmopolitan*.

According to Miller, the December 2016 *Cosmopolitan* was excluded by OPR based on violations of DO 914.07 §§ 1.2.1, 1.2.2.3, 1.2.17 on pages 44, 98–99, 113, 119, 122, 124–125, 130–132, and 182–183.  (Doc. 137-1 ¶ 34.)  A prison official could reasonably believe that the following items violated DO 914.07 and their exclusion was rationally related to a legitimate penological purpose: the semi-nude photos of page 44; the photo and descriptions of sexual issues on pages 98–99; the illustrations of sexual activity on pages 182 and 183; the descriptions of sexual fantasies on pages 124 and 125; and the articles on pages 130–132 discussing sexual intercourse.  The Court will grant summary judgment to Defendant as to the December 2016 *Cosmopolitan*, with the exception of page 113.[19]

Miller states that the January 2017 *Cosmopolitan* was excluded by OPR based on violations of DO 914.07 §§ 1.2.1, 1.2.2.3, and 1.2.17 on pages 22, 104–107, 112–115, 130, 132, 134–141.  (Doc. 137-1 ¶ 35.)  A prison official could reasonably believe that the following items violated DO 914.07 and their exclusion was rationally related to a legitimate penological purpose: the nude or sexually suggestive photos on page 22; and the photos, illustrations and descriptions of sexual activity on pages 104–107 and 112–115, 130, the second page 132, and pages 134–141.  Accordingly, the Court will grant summary judgment to Defendant as to the January 2017 *Cosmopolitan*.

The February 2017 *Cosmopolitan* was excluded by OPR based on violations of DO 914.07 §§ 1.2.1, 1.2.7, and 1.2.17 on pages 30-31, 103-107, and 137-149.  (Doc. 137-1 ¶ 36.)  A prison official could reasonably believe that the following items violated DO

---

[19] The Court did not locate a page 113 and it not clear what on the second page 112, which shows a fully clothed man and woman about to kiss, would violate DO 914, if that is the page Defendant is referring to.

914.07 and their exclusion was rationally related to a legitimate penological purpose: the articles, photos and illustrations on pages 30–31 and 137–149; and the semi-nude photo and description and photos of drug paraphernalia on pages 103-107.  Accordingly, the Court will grant summary judgment to Defendant as to the February 2017 *Cosmopolitan*.

The March 2017 *Cosmopolitan* was excluded by OPR based on violations of DO 914.07 §§ 1.2.1 and 1.2.17 on pages 19, 21, 35, 39, 41, 43, 57, 122, 180, 182–183, and 196. (Doc. 137-1 ¶ 37.)  A prison official could reasonably believe that the photos on pages 19 (i.e., the second page 18), 35, 57 (i.e., the second page 56), 122, 180, 182–183, and 196 violate DO 914.07's prohibition against sexually suggestive poses or attire, sexual intercourse, and masturbation, and that their exclusion was rationally related to a legitimate penological purpose.  The Court did not locate pages 39, 41 and 43, but a prison official could conclude that the second page 38, page 40B, and the second page 42 violated the proscription against depictions of nudity and sexually suggestive attire and poses.  The Court will therefore grant summary judgment to Defendants as to all the redactions in the March 2017 *Cosmopolitan* with the exception of page 21.[20]

### 5.    October 2014 Prison Legal News

OPR allowed the October 2014 issue of *PLN* with redactions on page 32 per DO 914.07 §§ 1.2.2.1, 1.2.2.3 and 1.2.2.4.  (Doc. 137-1 ¶ 43.)  Miller states that the issue was delivered to Plaintiff with redactions on or about June 15, 2015.  (*Id.*)

The Court has reviewed the redacted page submitted for in-camera review and a prison official could reasonably conclude that the redacted material violated DO 914.07 and the exclusion of that material was rationally related to a legitimate penological purpose.  One redacted passage quotes from a note that a prisoner gave a jail guard about wanting to have sex with the guard and the passage states that the prisoner flashed her breasts at the guard.  The second redacted passage is a quote from the guard recounting the prisoner's sexual fantasy and with whom the prisoner said she would like to have sex.  The third

---

[20] The Court did not locate page 21 and it is not clear what in the surrounding pages would violate DO 914.

redacted passage contains quotes from one or two guards about sexual activity that took place between the prisoner and the two guards.  Accordingly, the Court will grant summary judgment to Defendant as to the October 2014 issue of *PLN*.

**VI.    Dismissal of Individual Defendants**

In the August 30, 2019 Order, the Court dismissed Plaintiff's as-applied claim for damages and determined that the individual officer Defendants were entitled to qualified immunity as to those damages claims.  (Doc. 110 at 19.)  The only remaining claim in this action is Plaintiff's as-applied challenge seeking injunctive relief.  Defendant Shinn, in his official capacity, is the proper Defendant with respect to Plaintiff's injunctive relief claim. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (state officials can be sued in their official capacity for injunctive relief); *see also Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012) (the proper state defendant in a § 1983 action that seeks prospective injunctive relief is the person who " would be responsible for ensuring that injunctive relief was carried out, even if he was not personally involved in the decision giving rise to [the plaintiff's] claims") (citing *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (the prison warden was the proper defendant for a claim of injunctive relief, notwithstanding his lack of personal involvement in the challenged conduct, because he would be responsible for ensuring that the injunctive relief was carried out); *Hartmann v. Cal. Dep't of Corrs. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (an official who would have the authority to ensure execution of any court-ordered injunctive relief is a proper official-capacity defendant).  Accordingly, the Court will dismiss Defendants Barnes, Anderson, Osler, Mangan, Williams and Antolin from this action.

**VII.    The Remaining Claims**

Defendant has failed to demonstrate that the exclusions of one page of thumbnail photos from EPS, page 194 from the September 2016 *Elle*, the first page 94 of the December 2016 *Elle*, the February 2017 issue of *Elle*, page 113 of the December 2016 *Cosmopolitan*, and page 21 of the March 2017 *Cosmopolitan* were rationally related to legitimate penological interests.  As such, on this record, the Court is inclined to grant

summary judgment in favor of Plaintiff as to those exclusions.  Accordingly, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, the Court will allow Defendant 30 days to file a response indicating why summary judgment should not be granted in Plaintiff's favor as to those exclusions.[21]  Such response shall not be used as an opportunity to seek reconsideration of this Order or to reassert arguments already made in Defendant's Motion for Summary Judgment.  If Defendant does not file a response, the Court will grant summary judgment in favor of Plaintiff as to those exclusions.

**IT IS ORDERED:**

(1)    The reference to the Magistrate Judge is withdrawn as to Defendants Shinn's Motion for Partial Summary Judgment re Exhaustion (Doc. 145) and Defendants' Motion for Summary Judgment (Doc. 65) with respect to Plaintiff's as-applied claims.

(2)    The Order to Show Cause (Doc. 164) is **discharged**.

(3)    Defendants Barnes, Anderson, Osler, Mangan, Williams and Antolin are **dismissed with prejudice**.

(4)    Defendant Shinn's Motion for Summary Judgment re Exhaustion (Doc. 145) is **denied**.  Summary judgment is **granted** to Plaintiff on the issue of exhaustion.

(5)    Defendants' Motion for Summary Judgment with respect to Plaintiff's as-applied claim for injunctive relief (Doc. 65) is **granted in part and denied in part**.  The Motion is **denied** as to the following: one page of thumbnail photos from EPS; the first page 194 from the September 2016 *Elle*; page 94 of the December 2016 *Elle*; and the February 2017 issue of *Elle*.  The Motion is otherwise **granted**.

(6)    Within 30 days of the date of this Order, Defendant shall file a response pursuant to Rule 56(f) of the Federal Rules of Civil Procedure addressing why Plaintiff is

---

[21] Because the exclusion of other pages in the September and December 2016 issues of *Elle* and the December 2016 and March 2017 issues of *Cosmopolitan* were rationally related to legitimate penological interests, and because Plaintiff refused to accept any redactions to his magazines, it was reasonable for the prison to withhold the entire publications under these circumstances.  Moreover, it is doubtful Plaintiff would accept those issues with redactions now.

not entitled to summary judgment in his favor with respect to the items listed in paragraph (5) above.  Such response shall not exceed 15 pages, exclusive of attachments.

Dated this 15th day of July, 2020.

David G. Campbell
Senior United States District Judge